IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>        Plaintiff<br><br>vs.<br><br>EVERYWARE WORLDWIDE INC., VENTRILLION LLC d/b/a LIFESTYLE VACATION CLUBS, and XENTRILLION, LLC d/b/a LIFESTYLE VACATION CLUBS<br><br>        Defendants. | Case No. |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.    "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.    "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id...* This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Plaintiff Stewart Abramson ("Plaintiff") brings this action under the TCPA alleging that Xentrillion, LLC d/b/a Lifestyle Vacation Clubs, Ventrillion LLC d/b/a Lifestyle Vacation Clubs, and Everyware Worldwide Inc. sent calls promoting their goods and services, including to numbers that were on the National Do Not Call Registry, such as the Plaintiff. Those calls were made without the call recipient's prior express written consent and in the face of explicitly revoked consent.

4. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

5. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6. Plaintiff Stewart Abramson is a resident in this District.

7. Defendants Xentrillion, LLC d/b/a Lifestyle Vacation Clubs and Ventrillion, LLC d/b/a Lifestyle Vacation Clubs are related sellers of vacation packages that share common ownership. Plaintiff received calls they placed to sell him vacation packages, as well as for the benefit of Everyware Worldwide Inc., the merchant processing company for those vacation packages.

## Jurisdiction & Venue

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. This Court has specific personal jurisdiction over Defendants because they either sent calls into this District, processed payments to credit cards registered in this District, or benefitted from the same, including as part of Defendants' efforts to further their joint business enterprise.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were sent into this District.

## The Telephone Consumer Protection Act

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

12. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**Factual Allegations**

15. Defendant Xentrillion, LLC d/b/a Lifestyle Vacation Clubs and Defendant Ventrillion, LLC d/b/a Lifestyle Vacation Clubs are related companies, sharing common ownership, that sell vacation packages via telemarketing, including under fictitious and false pretenses, such as that the individuals they have called have "expiring" vacation credits they are entitled to.

16. Upon information and belief, as best Plaintiff can discern, Xentrillion, LLC and Ventrillion, LLC are nearly identical corporations, sharing common ownership, business operations, employees, marketing strategies, and products sold.

17. Defendant Everyware handles the customer management and payment processing for the vacation packages sold by Xentrillion and Ventrillion.

18. To generate business for this joint enterprise, Xentrillion and Ventrillion place illegal telemarketing calls to numbers on the National Do Not Call Registry.

19. Plaintiff's telephone number, (412) XXX-XXX, is a non-commercial telephone number not associated with any business.

20. Plaintiff's telephone number is used for personal residential purposes.

21. Plaintiff's telephone number has been listed on the National Do Not Call Registry since 2015.

22. Despite that, on November 23, 2022, the Plaintiff received a call from the caller ID 949-686-1382 at 2:06 PM.

23. When the Plaintiff answered the call, the agent, "Tina," stated that they were calling with "Lifestyle Vacations" and was asking for Plaintiff with respect to an "expiring vacation credit" of $1,200 and was calling to see if the Plaintiff had any interest in redeeming it.

24. "Tina" then transferred the call to "Harley Bowen," another employee of the Defendant, who was looking to sell the Plaintiff a vacation package for $298.

25. "Tina" and "Harley" stated they were calling from the fictitious "Lifestyle Vacations" or "Lifestyle Vacation Clubs," but ultimately the call disconnected.

26. A few minutes later the Plaintiff received another call from "Harley Bowen," this time from the caller ID 718-814-6648. Determined to identify the identity of the caller who was calling him illegally and for no other reason, the Plaintiff agreed to purchase the vacation package that "Harley" was selling, and Plaintiff provided his credit card number.

27. Thereafter, the Plaintiff received a call from "Andrea" from the caller ID 888-796-2477. "Andrea" stated that she was with "Lifestyle Vacation Clubs" and later "Lifestyle Vacations." However, upon information and belief, "Andrea" was actually an employee of Defendant Everywhere.

28. "Andrea" stated that she knew that Plaintiff had just spoken to "Harley" and wanted to confirm the purchase of the vacation package for $298.

29. The Plaintiff also received three text messages on November 23, 2022 from 954-827-9744, requesting that the Plaintiff reply "yes" to complete a $298 purchase with "Lifestyle Vacation Clubs." The text message also stated that the charge would appear on the Plaintiff's card as from "TRAVEL 800-407-6098."

30. However, the charge that appeared on the Plaintiff's card was from "Everyware" located at "701 Brozos Street, Suite 541, Austin, TX 78701" and the telephone number "888-268-2117."

31. When Plaintiff called the 888-268-2117 number back, the Plaintiff spoke to "Jennifer" and Defendant Everyware. "Jennifer" stated that she was with "Concierge Billing" and "Everyware Concierge Billing," that they handled customer service for the entity that charged the Plaintiff's card, "Lifestyle Vacation Clubs," and that the charge was voided.

32. In an effort to further identify the calls, the Plaintiff called the 949-686-1382 number and spoke with a woman who confirmed that "Lifestyle Vacation Clubs" was actually Ventrillion, Xentrillion, and shared the same owner, Adam Walker. When the Plaintiff stated that he was calling about illegal calls, this individual hung up.

33. Thereafter, various employees of Defendant Everyware contacted the Plaintiff and stated that they would cancel the charges, that they would communicate the Plaintiff's

6

complaints about illegal calls to the Ventrillion/Xentrillion Defendants and confirmed that Everyware had been providing payment processing customer service to the Defendants Ventrillion/Xentrillion for about five years.

34. In March of 2023, in response to investigatory correspondence sent to Everyware and requesting not to be called, Plaintiff received a letter from Jeffrey Oshinsky, an attorney representing Defendant Everyware, in essence, denying everything and denying that Everyware ever called or texted the Plaintiff. Curiously, the letter confirmed that Everyware "agree[d] to provide payment processing services pursuant to a written services agreement."

35. However, with full knowledge that Ventrillion and Xentrillion were breaking the law, Everyware did not terminate its relationship with them.

36. On April 17, 2024, the Plaintiff received another call to the (412) XXX-XXXX number from the caller ID 877-205-7345. The individual stated that she was "Joyce Walter," from "Lifestyle Vacations." "Joyce" knew about the Plaintiff's previous "purchase" in November of 2022 and was again calling to sell the Plaintiff a vacation package.

37. However, presumably because "Joyce" read the Plaintiff's notes or some other internal materials regarding the illegal telemarketing, "Joyce" stated that the "promotion expired" and hung up.

38. Thereafter, on October 24, 2024, the Plaintiff received a call to the (412) XXX-XXXX number from the Caller ID 800-735-3195. The individual stated that she was "Beverly" from "Lifestyle Vacation Clubs," and again knew about the Plaintiff's previous "purchase" in November of 2022 and was again calling to sell the Plaintiff a vacation package.

39. "Beverly" then transferred the call to an individual named "Kyle" who stated that he was the "director of operations" and wanted to again sell the Plaintiff the same vacation package for $298.00, or $324.00 with "Texas sales tax."

40. Again, to confirm the identity of the caller who was calling him illegally and for no other reason, the Plaintiff made a purchase.

41. The same day, the Plaintiff received an email from payments@everyware.com regarding their charge of $324.00 "on behalf of" support@lifestylevacationclubs.com at 888-754-1270.

42. The Plaintiff thereafter received a pending charge, followed by a pending credit, on his credit card from "Everyware" at the address "701 Brazos Street, Suite 541, Austin, TX 78701 (www.everyware.com 737- 377-4469)."

43. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

44. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

45. The FCC has instructed that companies such as Everyware may not avoid liability by hiding behind third parties hiring them to perform services to conduct illegal telemarketing like Ventrillion and Xentrillion:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to

judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

46. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." Id. at 6574 ¶ 1.

47. Everyware is liable for Defendant Ventrillion and Xentrillion's conduct and telemarketing calls placed by them and ultimately made to generate customers for Everyware, including the Plaintiff.

48. Indeed, Everyware's relationships with Defendants Ventrillion and Xentrillion contain numerous hallmarks of agency.

49. Ventrillion and Xentrillion admittedly entered into a contract with Everyware for Everyware to provide "payment processing services pursuant to a written services agreement."

50. Upon information and belief, this agreement also allows Everyware to contact Ventrillion and Xentrillion's customers on their behalf, process payments for Ventrillion and Xentrillion, and provide customer service for Ventrillion and Xentrillion with respect to payment-related questions and issues.

51. Moreover, as explained above, Everyware had full knowledge of Ventrillion and Xentrillion's illegal conduct, but continued to provide their services to Ventrillion and Xentrillion.

52. Moreover, Everyware entered into contracts purporting to bind Ventrillion and Xentrillion, processed payments on their behalf, and therefore purported to be able to incur obligations and enter into contractual relations involving Ventrillion and Xentrillion.

53. Everyware thus had full knowledge of Ventrillion and Xentrillion's illegal conduct and did not terminate or discipline them, thus implicitly ratifying their actions and endorsing their illegal behavior.

54. Not only that, but Everyware directly committed some of the illegal conduct complained of herein itself by calling the Plaintiff at least once and texting the Plaintiff at least three times to sell the Plaintiff the vacation package sold by Ventrillion and Xentrillion and to process the payment.

55. The aforementioned facts also demonstrate that Everyware failed to supervise Ventrillion and Xentrillion or enforce their compliance with applicable laws and regulations.

56. Everyware could also have eliminated the illegal conduct and risk of TCPA violations complained of herein by not doing business with clients knowingly conducting illegal telemarketing like Ventrillion and Xentrillion.

57. Finally, Everyware could have terminated Ventrillion and Xentrillion.

58. It did not.

59. Indeed, Everyware could have investigated if the customers it was servicing and processing credit card payments for were on the National Do Not Call Registry.

60. It did not.

61. Everyware agreed to do business with Ventrillion and Xentrillion without a proper investigation and did not terminate either of them when they were informed of Ventrillion and Xentrillion's illegal calling conduct.

62. As such, they knowingly ratified Ventrillion and Xentrillion's conduct.

63. Everyware also ratified Ventrillion and Xentrillion's conduct because, with knowledge of the fact that Ventrillion and Xentrillion were calling numbers on the National Do Not Call Registry with highly-illegal robocalls, they accepted the Plaintiff's credit card information, provided customer service to the Plaintiff, and ultimately attempted to process the illegally sold vacation package under its very own name on two separate occasions.

64. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

65. The aforementioned calls to the Plaintiff were unwanted.

66. The calls were nonconsensual encounters.

67. Plaintiff's privacy has been violated by the above-described telemarketing calls.

68. Plaintiff never provided his consent or requested the calls.

69. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

70. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

## **Class Action Statement**

71. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

72. Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

73. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

74. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the Class members.

75. Excluded from the Class are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

76. Plaintiff and all members of the Class have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time,

12

the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

77. This Class Action Complaint seeks injunctive relief and money damages.

78. The Class as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

79. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

80. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

81. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

82. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

83. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including, but not limited to, the following:

    a. Whether Defendants made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

    b. The corresponding degrees and liability as among and between Defendants;

    c. Whether Defendants' conduct constitutes a violation of the TCPA; and

    d. Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

84. Further, Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests which are antagonistic to any member of the Class.

85. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

86. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

87. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

88. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

89. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

90. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency

purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

91. Defendants' violations were negligent, willful, or knowing.

92. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

93. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

PLAINTIFF,
By his attorneys

By: */s/ Jeremy Jackson*
Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com
*Subject to Pro Hac Vice*